UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of BALLARD MARINE CONSTRUCTION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NOVA GROUP, INC., et al.,<br><br>Defendant. | CASE NO. 3:20-CV-05954-BHS-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: March 19, 2021 |

The District Court referred this case to United States Magistrate Judge David W. Christel. Dkt. 7. Pending before the Court are the following motions: (1) Defendants Federal Insurance Company and Liberty Mutual Insurance Company's Motion to Dismiss (Dkt. 14); Defendant Nova Group, Inc.'s Motion to Dismiss (Dkt. 20); Plaintiff Ballard Marine Construction LLC's Motion to Strike (Dkt. 39); Defendants Federal Insurance Company and Liberty Mutual Insurance Company's Alternative Motion to Stay (Dkt. 38); Plaintiff Ballard Marine Construction LLC's Motion for Partial Summary Judgment (Dkt. 30); Defendants Federal Insurance Company and Liberty Mutual Insurance Company's Motion to Strike (or otherwise

REPORT AND RECOMMENDATION - 1

1 refuse to consider) Plaintiff Ballard Marine Construction LLC's untimely and over-length Reply

2 (Dkt. 57); and, Plaintiff Ballard Marine Construction LLC's Motion to Strike the over-length

3 Reply of Defendants Federal Insurance Company and Liberty Mutual Insurance Company (Dkt.

4 58).

## PROCEDURAL BACKGROUND

On September 25, 2020, Plaintiff Ballard Marine Construction LLC (Ballard), filed a Complaint against Defendants Federal Insurance Company and Liberty Mutual Insurance Company (the Sureties), and Nova Group, Inc. (Nova) alleging Breach of Contract, Violation of Prompt Payment Act, Unjust Enrichment, Quantum Meruit, and Promissory Estoppel claims against Defendant Nova, and violations of the Insurance Fair Conduct Act (IFCA), the Consumer Protection Act (CPA), and the Miller Act against the Sureties. Dkt. 1.

On October 28, 2020, the Sureties filed a Joint Motion to Dismiss Ballard's IFCA and CPA claims. Dkt. 14. Ballard filed a timely response opposing dismissal (Dkt. 19) and the Sureties filed a timely reply. Dkt. 25.

On November 9, 2020, Ballard filed an Amended Complaint to correct the caption of the case. Dkt.17.

On November 18, 2020, Nova filed a Motion to Dismiss Ballard's contract-based claims. Dkt. 20. Ballard filed a timely response consenting to the dismissal of Ballard's claims against Nova insofar as their contract requires these claims to be resolved through arbitration, but opposing the dismissal of its claims against the Sureties. Dkt. 39. On December 3, 2020, the Sureties joined Nova's Motion to Dismiss. Dkt. 34. Ballard then filed a Motion to Strike the Sureties' Notice of Joinder. Dkt. 39.

On December 2, 2020, Ballard filed a Motion for Partial Summary Judgment on its Miller Act claim against the Sureties. Dkt. 30. The Sureties filed a timely response opposing summary judgment. Dkt. 45. Nova also filed a response in opposition. Dkt. 48. Ballard filed a reply. Dkt. 53. The Sureties then filed a Surreply (Dkt. 57) as did Ballard (Dkt. 58).

On December 7, 2020, the Sureties filed a Motion to Stay, in the alternative to their above Motion to Dismiss. Dkt. 38. Nova joined the motion. Dkt. 49. Ballard filed a timely response opposing a stay of this case. Dkt. 50. The Sureties filed a timely reply. Dkt. 52. Ballard then filed an untimely reply. Dkt. 53.

On December 30, 2020, the Sureties moved to strike Ballard's reply (Dkt. 53) as untimely and over-length. Dkt. 57. On December 31, 2020, Ballard, in turn, moved to strike the Sureties' Reply (Dkt. 52) as over-length. Dkt. 58.

Meanwhile, Defendants filed a joint Motion to Stay Discovery pending the Court's ruling on the above motions. Dkt. 24. Ballard filed a response taking no position. Dkt. 32. Defendants filed separate replies. Dkt. 35, 36. On December 9, 2020, this Court granted Defendants' Motions to Stay Discovery pending resolution of the above motions. Dkt. 41.

**FACTUAL BACKGROUND**

In July 2016, Nova and the United States Department of the Navy (the government) entered into a contract (RM09-2608) to repair a saltwater fire suppression system involving several drydocks in the Puget Sound Naval Shipyard used by the Navy for multiple activities including the refueling of its nuclear submarines. Dkt. 21-1. Nova, as principal, obtained a Miller Act bond from the Sureties for the penal sum of $10,692,000. Dkt. 47-1.

In August 2016, Nova entered into a Subcontract with Ballard in which Ballard agreed to provide certain labor, materials, and/or equipment in exchange for the contract sum of $2,657,576 (the Subcontract). Dkt. 21-2.

Nova and Ballard encountered a number of "differing site conditions" in the course of executing the job, including undisclosed underwater obstructions and water that required treatment prior to being discharged back into the inlet. Nova directed Ballard to perform this additional and changed work and to "track its costs." Dkt. 47-5.

In June 2020 Ballard's work on the project was complete. Ballard first demanded payment from Nova under the Subcontract's differing site conditions provision in the amount of $13,301,285.28, which Nova refused to pay. Dkt. 17 at 50. Ballard then made a claim to the Sureties for the unpaid principal amount of $13,301,285.28. Dkt. 31-3.

In a letter dated August 27, 2020, the Sureties denied Ballard's claim without prejudice, explaining:

> Based on Federal's independent investigation of the claim, documents, information, statutes and caselaw, it has determined that there is nothing due and owing under the Subcontract at this time; accordingly, there is no amount unpaid as required under the Miller Act. Accordingly, the claim is denied without prejudice.

Dkt. 51-6 at 2. The next day, Ballard notified the Sureties that it intended to assert claims under IFCA and the CPA in the "enhanced claim amount" of $39,923,055.84. Dkt. 47-5.

Meanwhile, on June 2, 2020, Nova submitted a "pass-through" claim to the government/owner, demanding payment in the total amount of $20,697,747, which represents Ballard's $13,301,285.28, and over $7,000,000 of mark-ups on Ballard's work. Dkt. 21-3.

In a letter dated June 9, 2020, the government indicated that it had received Nova's claim, and estimated that the Contracting Officer would issue a final decision on or before July 31, 2020. Dkt. 21-4. Then, on September 17, 2020, the government sent Nova another letter, stating:

> As you are aware, Naval Facilities Engineering Command Northwest requested an audit of your claim by the Defense Contract Audit Agency (DCAA) on July 30, 2020. On September 11, 2020 DCAA notified us that they would need until March 30, 2021 to complete the audit, but would make every effort possible to complete it sooner. Therefore, if we receive the audit by that date, the Contracting Officer's Final Decision will be issued by April 30, 2021.

Dkt. 21-7.

## DISCUSSION

### I. The Sureties' Motion to Dismiss (Dkt. 14) should be DENIED.

The Sureties move to dismiss Ballard's sixth and seventh claims for relief for lack of statutory standing under IFCA (RCW 48.30.010–48.30.900) and the CPA (RCW 19.86.010–19.86.920).

Rule 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir.1983).

The Sureties move to dismiss Ballard's IFCA and CPA claims, arguing Ballard lacks standing to be eligible for relief because it is a "third-party bond claimant." Dkt. 14 at 4. They rely principally upon *Kenco Constr., Inc. v. Hartford Fire Ins. Co.*, No. 2:19-cv-01000-RAJ, 2020 WL 1433738, at *2 (W.D. Wash. Mar. 24, 2020), in which the Honorable Richard A. Jones held that the plaintiff failed to state a claim under IFCA because it claimed the insurance company unreasonably *delayed* paying its claim, not that it "unreasonably *denied* a claim for coverage or payment," as IFCA requires. (emphasis added). The Sureties also direct the Court to cases from other jurisdictions not interpreting IFCA.

Ballard contends it is a "first party claimant" under IFCA, and that the Sureties' per se unfair and deceptive practices permit the Court to increase Ballard's award up to three times their actual damages under the CPA. Dkt. 19 at 2; Dkt. 1 at 8-9. According to Ballard, the use of common law definitions and cases interpreting common law bad faith, urged by the Sureties, is contrary to the legislative intent behind IFCA. Dkt. 19 at 22. This Court concurs, and finds Ballard has stated cognizable claims under IFCA and the CPA.

IFCA provides under RCW 48.30.015(1):

> Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs . . .

In addition, RCW 48.30.015(4) defines "first party claimant" as "an individual, corporation, association, partnership, or other legal entity asserting a right to payment as a covered person under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such a policy or contract."

IFCA does not distinguish between first-party and third-party coverage, as the Sureties argue, but instead creates a cause of action for any entity asserting a right to payment under an insurance policy or insurance contract. As Judge Peterson explained in *Workland & Witherspoon, PLLC v. Evanston Ins. Co.*, 141 F.Supp.3d 1148, 1153 (E.D. Wash. Oct. 29, 2015), "While the source of a common law bad faith claim is 'the fiduciary relationship existing between the insurer and insured,' an IFCA cause of action arises solely out of the statutory language in RCW 48.30.015." *Id.* (citing *Tank v. State Farm Fire & Cas. Co.,* 105 Wash.2d 381, 385 (1986)); *see also City of Bothell v. Berkley Reg'l Specialty Ins. Co.*, C14–0791 RSL, 2014 WL 5110485, at *10 (W.D.Wash. Oct. 10, 2014) ("Regardless of whether the policy provides

first-party coverage . . . or third-party coverage . . . IFCA provides anyone who has a right to file a claim under the insurance policy . . . with a cause of action against the insurer for unreasonable coverage denials."); *accord, Merriman v. American Guarantee and Liability Insurance Company*, 198 Wash. App. 594, 605-606 (2017).

In sum, the Sureties' Motion to Dismiss (Dkt. 14) should be denied.

**II.    Nova's Motion to Dismiss (Dkt. 20) should be GRANTED.**

Nova moves to dismiss all of Ballard's claims against it for lack of subject matter jurisdiction arguing this Court lacks subject matter jurisdiction over them.

"A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D.Wash. Jan. 17,1986); *see* 28 U.S.C. § 1331 (federal question jurisdiction).

According to Nova, Ballard's claims are all attempts to pursue immediate payment of damages alleged in Ballard's claim of "Differing Site Condition," covered by the Contract Disputes Act (CDA)[1], which divests the district court of jurisdiction. Dkt. 20 at 12-13.

---

[1] Where the CDA applies, it is the "exclusive mechanism for dispute resolution" for contract-based claims against the federal government. *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995); *see e.g.*, *Texas Health Choice, L.C. v. Office of Personnel Mgmt.*, 400 F.3d 895, 898-99 (Fed. Cir. 2005) ("The CDA exclusively governs Government contracts and Government contract disputes" and, "[w]hen the [CDA] applies, it provides the exclusive mechanism for dispute resolution.") (citations omitted).

REPORT AND RECOMMENDATION - 7

Ballard does not oppose the dismissal of its claims against Nova[2] "to the extent Ballard has direct claims against Nova that are not governed by the pass-through dispute resolution provisions in the Subcontract," and Ballard "concedes that Section 20[3] of the parties' Subcontract requires those claims to be asserted in an arbitration proceeding conducted by the American Arbitration Association and not in Federal Court." Dkt 39 at 9.

At oral argument Ballard acknowledged that the Court need not order the parties to engage in arbitration because, as Nova contends, Ballard has not yet alleged "a basis for recovery based on some separate wrongful act or omission by Nova . . .". Dkt. 20 at 6.

---

[2] Ballard does, however, move to strike the Sureties' Notice of Joinder in Nova's Motion to Dismiss. Dkt. 39. This motion should be denied as moot because the Court does not recommend dismissing any of Ballard's claims against the Sureties.

[3] Section 20 of the Subcontract states:

> If any dispute shall arise between Contractor and Subcontractor pertaining in any manner to the interpretation of this Subcontract, or to the breach hereof, which the parties are unable to settle by mutual agreement, ~~Contractor shall have the exclusive option either to have~~ the dispute shall be determined ~~by court or~~ by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. ~~If Subcontractor first commences a court action with respect to a dispute which Contractor desires to have determined by arbitration or an arbitration proceeding which Contractor desires to have determined by a court action, Contractor shall have the right to have said court action or arbitration proceeding stayed if Contractor promptly shall commence the arbitration proceeding or court action desired by Contractor.~~ Judgment upon the award in any arbitration proceeding may be entered in any court having jurisdiction thereof. The prevailing party (as determined by the court or arbitrator(s)) shall be entitled to reasonable expenses and attorneys' fees from the other party in an amount to be fixed by the court or arbitrator(s). The arbitrator(s) in any arbitration proceeding shall have the right to allocate his or their fees between the parties or to charge all of such fees to one party, as the arbitrator(s) shall deem to be just. The laws of the site of the Work shall govern all disputes referred to in this paragraph. ~~The provisions of Section 1283.05 of the Code of Civil Procedure of the State of California (i3ertaining to depositions and discovery) hereby are incorporated by reference herein and are made a part hereof, if the site of the work is in California~~. If the Prime Contract contains a clause for the settlement of disputes by arbitration and if an arbitration proceeding is commenced by Contractor or by Owner which involves the Work, upon written demand by Contractor, Subcontractor shall become a party to the arbitration proceeding and Subcontractor shall be bound by the award therein and by any judgment entered upon the award . Subcontractor shall require each of its subcontractors, of every tier, to agree to the obligation of Subcontractor specified in the preceding sentence.

Dkt. 31-1 at 18 (strikethroughs in original).

This Court concurs with Nova that the CDA vests exclusive jurisdiction over the parties' differing site condition claim in the U.S. Court of Federal Claims and the Court of Appeals for the Federal Circuit. *McDonnell Douglas Corp. v. U.S.*, 754 F.2d 365, 370 (Fed. Cir. 1985). The Court further finds that any other disputes between Ballard and Nova should be resolved through arbitration, in accordance with Section 20 of the Subcontract.

Finally, Nova states that its "goal" in filing this motion "is for the case to be dismissed in its entirety." Dkt. 44 at 2. For the reasons discussed herein, this Court is not persuaded by this argument and does not recommend dismissing Ballard's IFCA, CPA, or Miller Act claims against the Sureties. Accordingly, the Court finds that Nova's Motion to Dismiss (Dkt. 20) should be granted, and that Nova should be dismissed from this case.

### III. The Sureties' Motion to Stay (Dkt. 38) should be GRANTED.

The Sureties move, in the alternative to their Motion to Dismiss (Dkt. 14), to stay Ballard's claims against them until Ballard's differing site conditions claim is resolved in accordance with the Subcontract between Nova and Ballard, because at present there is no "amount due" under the contract. Dkt. 38 at 2.

"A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). "A district court may stay proceedings pending resolution of independent proceedings which bear upon the case, whether those proceedings are judicial, administrative, or arbitral in character." *Pub. Employees for Envtl. Responsibility v. U.S. Dep't of Navy,* C08-5552BHS, 2009 WL 2163215, at *9 (W.D. Wash. July 17, 2009). In determining whether a stay is appropriate, courts weigh the (1) "hardship or inequity which a party may suffer in being required to go forward," and the (2) "orderly course of justice measured in terms

of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *United States ex rel. Brooklyn Iron Works, Inc. v. Fid. & Deposit of Md.*, Case No. 16-5575 RJB, 2016 WL 6298790 (W.D. Wash. Oct. 27, 2016) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

The Sureties argue that Ballard's Miller Act claim is premature because the Subcontract requires Ballard to await the outcome of the CDA process[4], otherwise "there is a substantial risk that the factual and legal determinations made in the pre-existing and ongoing administrative proceeding [pursuant to the CDA] will differ from those reached in this action, leading to, among other issues, inconsistent determinations that could create discrepancies in recovery (e.g., the Government could award less for Ballard's claim than Ballard receives in this action, leading to a windfall expressly disallowed under the Subcontract)." Dkt. 38 at 6. The Sureties further contend that permitting Ballard's claims to proceed before this Court will "unnecessarily burden witnesses and likely create a conflict-of-interest" between Ballard and Nova." *Id*.

Ballard disputes the relevance of this argument because under the Miller Act[5] unless a party enters into a valid waiver of its Miller Act rights it is entitled to prompt payment 90-days

---

[4] The relevant provision (Section 11 of the Subcontract) states, "If Subcontractor shall claim that it is entitled to additional compensation or damages by reason of any act or omission of [the Government] or for which [the Government] is responsible, Subcontractor . . . shall submit a claim therefore in writing to Contractor and Contractor will, on behalf of Subcontractor, submit the claim to [the Government] and invoke on behalf of Subcontractor all procedures and remedies provided in the Prime Contract for the resolution of the claim. Subcontractor agrees to be bound to Contractor to the same extent as Contractor is bound to [the Government] by such procedures and remedies and by the final decision of any Contracting Officer, court, board, or other tribunal having jurisdiction of the claim pursuant to the Prime Contractor to law. . . In the event any claim of Subcontractor is presented to [the Government] with claims of Contractor, or others, Contractor's reasonable determination as to the amount, if any, paid by [the Government] with respect to Subcontractor's claim shall be final and binding on Subcontractor." Dkt. 31-1 at 8.

[5] The Miller Act contains explicit requirements regarding what constitutes a valid waiver of a subcontractor's Miller Act rights. It states that waiver of the right to bring a civil action on a payment bond required by the Act is avoid "unless the waiver is--(1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract. 40 U.S.C. § 3133(c). Additionally, a waiver of a Miller Act right of action may only be made in "clear and

REPORT AND RECOMMENDATION - 10

after the last day of work[6]. Since Ballard did not waive its Miller Act rights and 90-days have passed since its last day of work on the project, Ballard insists the Sureties must immediately pay Ballard the full Penal sum on the surety bond, which is less than Ballard claims it is owned based upon the $13,301,285.29 that Nova certified in its pass-through claim to the government. Dkt. 50 at 2.

Ballard points to a recent case in this district in which the Honorable James L. Robart rejected the same argument the Sureties make here. In *Pinnacle Crushing & Constr. LLC v. Hartford Fire Ins. Co.*, No. C17-1908JLR, 2018 WL 1907569, at *4 (W.D. Wash. Apr. 23, 2018) the Miller Act surety argued that it was not obligated to make immediate payment on a subcontractor's Miller Act claim because the contractual pass-through dispute resolution process had not been exhausted and the surety's liability was "entirely contingent" on the outcome of that process. Relying on the facts of the case and the Ninth Circuit's decision in *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g Inc.*, 290 F.3d 1199, 1209 (9th Cir. 2002)[7], Judge Robart rejected the surety's contention, finding that the contract language did not constitute a valid waiver of the subcontractor's Miller Act rights. *See also United States v. McCarthy Building Cos., Inc.*, No. 13-cv-03699-HRL, 2015 WL 4198794, at *2-3 (N.D. Cal. July 10, 2015)

---

explicit" terms. *See United States ex rel. Walton Tech., Inc. v. Weststar Eng'g Inc.*, 290 F.3d 1199, 1209 (9th Cir. 2002).

[6] 40 U.S.C.A. § 270(b)(1) states, "Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."

[7] In *Weststar*, the Ninth Circuit held that a "pay when and if paid" clause did not waive a subcontractor's Miller Act right to recover on a payment bond because the clause did "not identify any rights that [the subcontractor] may have under the Miller Act payment bond … as a predicate for releasing them." 290 F.3d at 1209.

1  (concluding that the contractual provisions did not clearly and explicitly waive Miller Act
2  rights).

3  In the case at bar, the Sureties urge this Court to reject the "reasoning and conclusion" in
4  *Pinnacle* because it "ignores the budding national consensus, other decisions within the Western
5  District of Washington, and unequivocal legislative history" by equating "contractual dispute
6  resolution with waiver under the Miller Act." Dkt. 38 at 9. Instead, the Sureties urge this Court to
7  defer to cases such as *United States v. Dick/Morganti,* No. C 07-02564, 2007 WL 3231717 (N.D.
8  Cal. Oct. 30, 2007), where the court granted a stay because the subcontract provided the parties
9  would "stay any action filed by the Subcontractor until the dispute resolution and appeals process
10 between the Contractor and the Owner is exhausted." *Id*. at *1. The *Dick/Morganti* court
11 determined that staying the plaintiff's Miller Act claim on the basis of this language did not
12 effect an invalid waiver of the subcontractor's Miller Act rights because the stay was
13 temporary—pending completion of the administrative resolution process—and supported by
14 legislative history stating that provisions requiring alternative methods of resolving disputes
15 "would remain enforceable with a claimant's Miller Act rights preserved by a timely suit that can
16 be stayed pending the outcome of the subcontract dispute resolution procedure." *Id*. at *3
17 (quoting H.R.Rep.No. 106-277, at 5 (1999)).
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24

REPORT AND RECOMMENDATION - 12

1    Similarly, this Court finds Ballard did not waive its Miller Act rights, but that Ballard

2 agreed in Subsection 11[9] of the Subcontract to be bound by the measure of recovery[10]

3 determined by the ongoing CDA process. Although Ballard does not concede as much, its

4 demand for immediate payment by the Sureties amounts to an unwarranted request to be released

5 from the terms of this contractually agreed upon remedy.

6    Congress expressly sought to "[respect] the freedom of the parties to the subcontract to

7 specify means to resolve their disputes . . . ", so long as those means do not contravene the

8 purposes of the Miller Act. H.R.Rep. No. 106-277, at 5 (1999). Here, although the Subcontract

9 does not reference staying Ballard's potential claims pending the outcome of the CDA process as

10 did the subcontract in the *Dick/Morganti* case, the facts are otherwise so similar that this Court is

11 persuaded a temporary stay would likewise not effect a "waiver of the right to bring an action"

12 under the Miller Act because the stay will "merely postpone [Ballard's] Miller Act right to sue."

13 2007 WL 3231717 at *3; *see also, D'Ambra Constr. Co. v. St. Paul Mercury Ins. Co.*, 24 F.

14 Supp. 2d 218, 221-23 (D. R.I. Oct. 29,1998)(where subcontractor agreed to a procedure for the

15 resolution of disputes with the government/owner and a limitation on the liability of the general

16 contractor to any sum paid it by the government, subcontractor was not entitled to more than that

17 sum).

18    Consequently, this Court recommends staying these proceedings pending resolution of

19 the CDA process. The Contracting Officer's Final Decision is currently due by April 30, 2021.

---

[9] Section 11 of the Subcontract states that Nova's "reasonable determination as to the amount, if any, paid by [the Government] with respect to [Ballard's] claim shall be final and binding on Subcontractor." Dkt. 31-1 at 8.

[10] The Court notes that this provision is consistent with Ninth Circuit case law, which looks to the underlying bonded subcontract to determine the measure of "sums justly due" under the Miller Act. *U.S. for Use and Benefit of Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199, 1207 (9th Cir. 2002).

REPORT AND RECOMMENDATION - 13

Once that decision issues, Nova has the right to file an appeal with the appropriate board of contract appeals, or directly to the Court of Federal Claims. *See Bonneville Assocs. v. United States*, 43 F.3d 649, 653 (Fed.Cir. 1994). Therefore, the Court recommends directing Ballard and the Sureties to file a joint status report within 30 days of the Contracting Officer's Final Decision, and every 60 days thereafter until the parties resolve their issues or request that the stay be lifted.

### IV. **Ballard's Motion for Partial Summary Judgment (Dkt. 30) should be DENIED without prejudice.**

Since a ruling on Ballard's Motion for Summary Judgment requires resolution of the CDA process and further development of material facts the Court recommends the motion be denied without prejudice, with the right to refile following termination of the stay.

### V. **The Parties' Motions to Strike should be GRANTED in Part.**

In its Surreply in Opposition to Motion for Summary Judgment, the Sureties move to strike Ballard's "untimely arguments and over-length reply brief (Dkt. 53). Dkt. 57. In its Surreply in Opposition to the Sureties' Alternative Motion to Stay – Motion to Strike the Sureties Over-Length Brief, Ballard moves to strike the Sureties Reply in Support of Alternative Motion to Stay (Dkt. 52). Dkt. 58. The Court should grant the motions as follows: the Court will not consider any pages of Ballard's untimely reply brief (Dkt. 53) or any pages beyond the page limits of the Sureties' Reply (Dkt. 52), as dictated by the Local Rules. The parties are reminded to strictly comply with page limitations and filing deadlines in any future filings.

### CONCLUSION

The Court recommends the following disposition of the pending motions:

1. The Sureties' Motion to Dismiss (Dkt. 14) should be DENIED;

2. Nova's Motion to Dismiss (Dkt. 20) should be GRANTED;

3. Ballard's Motion to Strike the Sureties' Notice of Joinder (Dkt. 39) should be DENIED;

4. The Sureties' Alternative Motion to Stay (Dkt. 38) should be GRANTED;

5. Ballard's Motion for Partial Summary Judgment (Dkt. 30) should be DENIED without prejudice; and,

6. The Sureties' Motion to Strike (or otherwise refuse to consider) Ballard's untimely and over-length Reply (Dkt. 57) and Plaintiff Ballard Marine Construction LLC's Motion to Strike the Sureties' over-length Reply (Dkt. 58) should be GRANTED in part, as follows: the Court will not consider any pages of Ballard's reply (Dkt. 53), nor any pages of the Sureties reply (Dkt. 52) beyond the page limits applicable under the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). The clerk is directed to set the matter for consideration on March 19, 2021, as noted in the caption.

Dated this 4th day of March, 2021.

David W. Christel
United States Magistrate Judge