1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA, for
the use and benefit of BALLARD
MARINE CONSTRUCTION, LLC,

                    Plaintiff,

    v.

NOVA GROUP INC, et al.,

                    Defendants.

CASE NO. C20-5954BHS-DWC

ORDER ADOPTING REPORT
AND RECOMMENDATION

THIS MATTER is before the Court on the Report and Recommendation ("R&R")

of the Honorable David W. Christel, United States Magistrate Judge, Dkt. 61, resolving

seven pending motions in this Miller Act case:

    (1) Defendant Sureties Federal Insurance Company and Liberty Mutual Insurance

Company's Motion to Dismiss Plaintiff Ballard Marine Construction's extracontractual

claims against them, Dkt. 14;

    (2) Defendant general contractor Nova Group, Inc.'s Motion to Dismiss Ballard's

claims against it for lack of subject matter jurisdiction, Dkt. 20;

(3) Ballard's Motion for Partial Summary Judgment on its payment claims against the sureties, Dkt. 30;

(4) Federal and Liberty Mutual's Alternative Motion to Stay, Dkt. 38;

(5) Ballard's Motion to Strike, Dkt. 39;

(6) Federal and Liberty Mutual's Motion to Strike Ballard's Reply, Dkt. 57; and;

(7) Ballard's Motion to Strike the Sureties' Reply, Dkt. 58.

There are four objections to the proposed resolution of these motions, two of which are substantive. The Court has reviewed the underlying motions, the Report and Recommendation, the objections, and the responses to those objections.

# I.   BACKGROUND.

In 2016, the United States Navy hired a general contractor, Nova, to repair a fire suppression system at the Puget Sound Naval Shipyard. Nova hired Ballard as a subcontractor. The Subcontract price was $2,657,576. Under the Miller Act, 40 U.S.C. §§ 3131–34, Nova (as principal) obtained from sureties Federal Insurance and Liberty Mutual payment bonds with a cumulative penal sum of $10,692,000. The Miller Act requires such bonds to ensure that subcontractors like Ballard are paid even if the general contractor does not or cannot pay them. Dkt. 47-1.

Nova and Ballard encountered "differing site conditions" during the project. Ballard claims that it was instructed to continue performing and to "track its [increased] costs." Dkt. 47-5. Ballard completed its work in June 2020. It sought $13,301,285.28[1]

---

[1] Ballard Marine seeks this amount in addition to the subcontract price, which it has been paid.

ORDER - 2

from Nova, and Nova declined to pay until the resolution of its "pass through" claim for the additional cost from the Navy. Ballard then sought payment from the sureties. Dkts. 17 at 50 and 31-3. The sureties similarly declined to pay, explaining that there was no unpaid amount due under the Miller Act. Dkt. 51-6 at 2. Ballard notified the sureties that it was going to assert claims under Washington's Insurance Fair Conduct Act, Chapter 48.30 RCW, *et seq.*, ("IFCA") and Consumer Protection Act, Chapter 19.86 RCW, *et seq.* ("CPA").

Meanwhile, Nova had submitted to the Navy a pass-through claim for payment of the additional costs Ballard (and Nova) had incurred on the project, totaling more than $20,000,000. Dkt 21-3. In June 2020, the Government acknowledged receipt of Nova's claim and informed it that the contracting officer would issue a decision by the end of July 2020. Dkt. 21-4. That estimated date was later revised to April 30, 2021 because the Navy requested an audit of Nova's increased cost claim Dkt. 21-7.

Ballard sued Nova and the sureties in September 2020. It seeks payment under the Subcontract and under the surety's payment bonds. Ballard also seeks exemplary (trebled) damages from the sureties under the IFCA and the CPA.

The sureties seek dismissal of Ballard's IFCA and CPA claims, arguing that as a third-party claimant it does not have statutory standing to assert those claims against a surety. Dkt. 14. The R&R, Dkt. 61, recommends that the Court deny the sureties' Motion to Dismiss, Dkt. 14, and the sureties object, Dkt. 62.

Nova also seeks dismissal, Dkt. 20, arguing that this Court does not have subject matter jurisdiction over Ballard's claim. It argues that Ballard's "immediate payment"

1   claim for differing site conditions against Nova is governed by Contract Disputes Act

2   ("CDA"), which divests the Court of jurisdiction. To the extent Ballard has other claims

3   against Nova, it argues, they are subject to the subcontract's arbitration provision.

4          Ballard does not oppose dismissal of its payment claim against Nova. It does move

5   to strike the sureties' joinder in Nova's motion, Dkt. 34. The R&R recommends granting

6   Nova's Motion to Dismiss (as to Nova, not as to the sureties) and denying as moot

7   Ballard's Motion to Strike. Ballard does not object to either proposed ruling.

8   Accordingly, the R&R on these points is **ADOPTED**, and Nova's Motion to Dismiss

9   Ballard's payment claim against it, Dkt. 20, is **GRANTED** and that claim is

10  **DISMISSED** without prejudice. Ballard's Motion to Strike, Dkt. 39, is **DENIED**.

11         Ballard seeks partial summary judgment on its payment claim against the sureties.

12  Dkt. 30. The R&R recommends denying the motion without prejudice pending resolution

13  of the CDA process. Ballard does not object. Accordingly, the R&R on this point is

14  **ADOPTED**, and Ballard's Motion for Partial Summary Judgment, Dkt. 30, is **DENIED**

15  without prejudice to re-file.

16         The sureties move in the alternative to stay the case, Dkt. 38, until Ballard's

17  differing site conditions claim is resolved under the subcontract and the CDA, arguing

18  that until that occurs, there is "no amount due" under the contract. The R&R recommends

19  granting the Motion to Stay, and Ballard objects, Dkt. 64. The sureties' response, Dkt. 68,

20  asks this Court to strike Ballard's objection as over-length.

21         Federal and Liberty Mutual's Surreply, Dkt. 57, includes a Motion to Strike

22  Ballard's Reply, Dkt. 53, in support of its Motion for Partial Summary Judgment, Dkt.

30, arguing it was untimely and over-length. The R&R recommends granting the Motion

to Strike. Although Ballard does not object to the denial of its underlying partial

summary judgment motion, it does object to the R&R's proposed resolution of the

sureties' Motion to Strike one of its briefs in support of that motion. Dkt. 63. The

sureties' response to that objection, Dkt. 68, asks this Court to strike Ballard's objection,

Dkt. 63, as over-length under the Local Rules.

Ballard's own Surreply, Dkt. 58, includes a Motion to Strike the sureties'

overlength reply, Dkt. 52, in support of its their Alternative Motion to Stay, Dkt. 38,

arguing it was untimely and over-length. The R&R recommends granting in part the

Motion to Strike. The sureties did not object. Accordingly, the R&R on this point is

**ADOPTED**, and Ballard Marine's Motion to Strike, Dkt. 58, is **GRANTED IN PART**.

Finally, Nova objects to two sentences in the R&R, which it suggests may be

factual findings and which it claims are not accurate. Dkt. 65. It asks the Court to revise

the R&R's statements. Ballard responds that the statements are accurate. Dkt. 70.

The R&R's disputed proposed rulings are addressed in turn.

## II.   DISCUSSION

A district judge must determine de novo any part of a magistrate judge's proposed

disposition that has been properly objected to. The district judge may accept, reject, or

modify the recommended disposition; receive further evidence; or return the matter to the

magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection requires

specific written objections to the findings and recommendations in the R&R. *United*

*States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Objections to a

R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge. *See, e.g.*, *Fix v. Hartford Life & Accident Ins. Co.*, CV 16–41–M–DLC–JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases).

**A.     The R&R's Resolution of the Sureties' Motion to Dismiss is ADOPTED.**

The sureties argue that Ballard does not have statutory standing to assert IFCA or CPA claims against them and seek dismissal of those claims under Federal Rule of Civil Procedure 12(b)(6). They argue that Ballard is a third-party claimant against a bond to which it is not a party, not a first-party claimant under an insurance policy, and the IFCA does not give it standing to assert such claims. It argues that a surety contract is a "tripartite" insurance relationship and that the IFCA claims are limited to insureds under a "bipartite" relationship (insurer, insured).

The R&R rejected this position. Dkt. 61 at 5–6.

The IFCA creates a cause of action for "first party claimants" who are unreasonably denied coverage or payment of benefits by an insurer:

> Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs[.]

RCW 48.30.015(1). Subsection (4) defines the pivotal term:

> "First party claimant" means an individual, corporation, association, partnership, or other legal entity *asserting a **right to payment** as a **covered person** under an insurance policy or **insurance contract arising out of** the occurrence of the **contingency** or loss* covered by such a policy or contract."

*Id*. at (4) (emphasis added).

1    The sureties argue that, stated another way, this second definition means "one who

2 **owns** an insurance policy may sue their insurer for unreasonably denying a claim of

3 coverage." Dkt. 14 at 5 (citing *Trinity Univ. Ins. v. Ohio Cas Ins. Co*., 176 Wn. App. 185,

4 201 (2013)) (emphasis in original). They argue *Trinity*[2] held the "IFCA's purpose is to

5 protect individual policy holders from unfair acts by their insurers . . . . Nothing in the

6 IFCA gives third party claimants the right to sue." *Id.*

7    The sureties also rely on *Kenco Construction v. Porter Brothers Construction,*

8 *Inc.*, 4 Wn. App. 2d 1008, 2018 WL 2966785 (2018), which explained why a surety is

9 not subject to a bad faith claim asserted by a general contractor (there, Porter) against his

10 subcontractor's (Kenco's) performance bond:

11       Bad faith arises out of the fiduciary relationship between the insured and
         the insurer. Porter was not a party to the contractual relationship between
12       the [surety] and Kenco, and no fiduciary duty existed between the [surety]
         and Porter.

13

14 _____

15       [2] Ballard argues that *Trinity's* holding has no application here because the plaintiff there
was clearly a third party not entitled to seek payment under an insurance contract. *Trinity* is a
16 subrogation case, arising from an injury to a subcontractor's employee. The subcontractor was
insured by Trinity and the general by Millennium. The injured plaintiff sued the general, which
17 tendered defense to Millennium. Millennium then claimed that it was an additional insured under
the policy Trinity issued to the subcontractor. It tendered the claim to Trinity, and Trinity
18 accepted the tender and defended the claim. Trinity asserted that Millennium was also a primary
insurer and asked it to participate in the defense. Millennium refused, Trinity paid the claim and
sued, asserting bad faith, IFCA, and other claims.
19       Recognizing that such claims can be assigned, the court rejected Trinity's bad faith and
IFCA claims because Millennium's insured (the general contractor) had not assigned its rights
20 against Millennium to Trinity. Thus, Trinity was a third-party claimant because it was not
covered by, and had no right to assert a direct claim for payment under, the Millennium policy.
21 *Trinity*, 176 Wn. App. at 200–01 (citing *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381,
385 (1986)).

22

1   *Kenco*, 2018 WL 2966785, at *16 (citing *Tank*, 105 Wn.2d at 385). Without explanation,[3]

2   the Washington Court of Appeals also quoted *Trinity's* statement that nothing in the

3   IFCA gives third-party claimants the right to sue. *Id*. It did not address why the plaintiff

4   contractor was a third-party, and not a first-party, claimant under the IFCA.

5       Nor was this issue addressed in the third case upon which the sureties primarily

6   rely, *Kenco Construction, Inc. v. Hartford Fire Insurance Co*., No. C19-1000RAJ, 2020

7   WL 1433738 (W.D. Wash. March 24, 2019). *Hartford* arose out of the same project as

8   *Kenco*, above. In the latter case, Kenco sought to recover under a payment bond Porter

9   purchased from Hartford, obligating Hartford to pay project subcontractors if Porter did

10  not. Judge Jones dismissed Kenco's IFCA claim against the surety *not* because Kenco

11  was a third-party claimant, rather than a first-party claimant, but because Kenco could not

12  plausibly allege that Hartford had denied its claim; instead, it ultimately paid it. *Id*. at *4.

13      These authorities do not directly address the situation presented here.

14      A typical three-party insurance relationship involves a liability policy, for example

15  an auto policy. The plaintiff injured in an auto accident by an insured, at-fault driver is a

16  third-party claimant against the driver's insurer; she is not "covered" under the policy.

17  She can sue the driver, and the insurer must defend and ultimately indemnify that driver,

18  up to the policy limits, but the plaintiff cannot sue the insurance company directly for

19  damages caused by the accident, even if the insurer denies the driver's claim for defense

20  

21      [3] The sureties' claim that *Kenco* is the only reported opinion "evaluating" an IFCA claim
    in the surety bond context is therefore only partly correct. *Kenco* did not evaluate the suretyship
    nature of the relationship; it instead simply quoted a case involving an entirely different context,
22  assuming without explaining that Kenco was a third-party claimant.

1  and indemnity. And, absent the insured driver's assignment of rights against his insurer to

2  the plaintiff (typically accompanied by a confessed judgment, in exchange for a covenant

3  not to execute on that judgment), the injured plaintiff cannot sue the insurer for bad faith

4  or for violating the CPA or the IFCA, no matter how egregious the insurer's conduct.

5      A typical "bipartite" insurance arrangement involves garden variety claim under a

6  homeowner's policy. An insured homeowner making a claim for fire damage to her home

7  is a first-party claimant. If the insurer unreasonably denies coverage, the insured may

8  assert breach of contract, bad faith, CPA, and IFCA claims against her own insurer.

9      Cases involving a surety contract are not directly analogous to either of these

10 examples. The Miller Act requires prime (or general) contractors on large government

11 construction projects to post two bonds, commonly purchased from a surety. The first is a

12 performance bond, which protects the government from the general contractor's non-

13 performance. The second is a payment bond, which protects subcontractors—who have

14 no contract with the governmental owner and no ability to lien the government's

15 property—from non-payment by the general. The purpose of a Miller Act payment bond

16 is to "shift the ultimate risk of non-payment from the workmen and the suppliers to the

17 surety." *Apple Valley Comms., Inc. v. Budget Elec. Contractors, Inc*., No. EDCV 19-1643

18 PSG (SHKx), 2020 WL 8385651, at *5 (C.D. Cal. Dec. 8, 2020) (citations omitted).

19     The surety generally agrees to pay the subcontractor if the general does not. As

20 consideration for this undertaking, and in addition to a premium, the surety will require

21 the general contractor's promise to indemnify the surety if the surety is required to pay

22

1   and often requires the general to back up that promise with a secured interest in other

2   assets.

3         Ballard argues and demonstrates that there is "exhaustive" authority for the

4   proposition that one who does not "own" or purchase an insurance policy may

5   nevertheless enforce it against an insurer—they are "covered" and have the right to seek

6   payment directly. Dkt. 19 at 4 n.7 (cataloging cases in which life insurance beneficiaries

7   and additional insureds in various contexts successfully asserted IFCA claims). It argues

8   that under the IFCA, one who is entitled to seek payment directly from an insurer under

9   an insurance contract is entitled to assert a first party claim against that insurer, whether

10  they "own" the policy or not.

11        Ballard emphasizes that a suretyship contract is included in the Washington

12  Insurance Commissioner's definition of "insurance contract," which is the term used in

13  the IFCA's definition of "first-party claimant." *Id.* at 4 (citing WAC 284-30-320(7)). It

14  argues that where one has a right to assert a claim for payment directly against the

15  insurer, he is a "covered" person and a first party claimant under the IFCA.

16        In *Navigators Specialty Insurance Co. v. Christensen, Inc.*, 140 F. Supp. 3d 1097

17  (W.D. Wash. 2015), Judge Coughenour explained[4] that a first party *coverage* is distinct

18

19        [4] *Navigators* involved a claim by the injured employee of a subcontractor, J&S, asserted

20  against the general contractor, Christensen. Christensen tendered the claim to J&S's insurer, Navigators. When Navigators brought a declaratory judgment action seeking a determination that

21  it did not have to defend the claim, Christensen asserted an IFCA counterclaim based on Navigators' failure to pay defense costs even before it obtained a declaratory judgment. The

22  Court denied Navigators' motion to dismiss based on lack of "first-party claimant" status. *Id.* at 1102.

ORDER - 10

from a first party *claim*. The Court noted that this District has reached divergent results on the issue. *Id*. at 1099–1101. *Navigators* held that the IFCA's language and its legislative history support "a right of action to first party claimants whether under a first-party or third-party insurance contract." *Id*. at 1102. It held that one who is entitled to assert a claim directly against an insurer is a first-party claimant, even if the policy provides third-party coverage. Accordingly, the Court denied the motion to dismiss the IFCA claim. *Id. See also Merriman v. American Guarantee & Liab. Ins. Co.*, 198 Wn. App. 594, 610 (2017) (owners of property damaged in warehouse fire were "covered" under warehouseman's policy even though they were not named in it, and had the right to assert first party-payment claim against insurer, and thus could assert a bad faith claim based on insurer's (and its adjuster's) failure to disclose coverage.).

Against these authorities, Ballard argues, persuasively, that the IFCA's definition of "first-party claimant" does not include the limitations that the sureties ask the Court to impose—it could have, but does not, include a requirement that the insurance contract be "bipartite," or that the plaintiff "own" the insurance contract. Instead, it defines "first-party claimant" as a person or entity *covered* under an insurance contract, asserting a right to payment, arising out of the contingency or loss covered by the insurance contract. RCW 48.30.015(4). As Ballard argues, the sureties dispute only the "covered" portion of the definition, but it is clear that Ballard was "protected"—a synonym—under the suretyship insurance contract; the Miller Act requires that it be.

Unlike the plaintiff injured by an insured, at-fault driver—and like the property owners not named in but nevertheless "covered by" a warehouseman's policy in

*Merriman*—a Miller Act subcontractor may seek payment directly from the surety if the general contractor does not timely pay. He does not need an assignment of rights from the "insured" to do so. A Miller Act subcontractor is "covered" by the general contractor's payment bond, and it has the right to seek payment directly from the surety at least 90 days, but not more than 365, after it completes it work. 40 U.S.C. §§ 270b(a) & 3133(b)(4).

Ballard is a first-party claimant to the sureties' payment bonds under the IFCA, and it has standing to assert such a claim. For the same reasons, it has standing to assert a CPA claim. The Report and Recommendation properly recommends denial of the sureties' Motion to Dismiss these claims for lack of "first-party claimant" status. The R&R on this point is **ADOPTED** and the sureties' Motion to Dismiss Ballard's IFCA and CPA claims, Dkt. 14, is **DENIED**.

**B.     The R&R's resolution of the Sureties' Motion to Stay is ADOPTED.**

The sureties ask the Court to stay this case pending resolution of Nova's "upstream" CDA process, consistent with the Prime Contract and the Nova/Ballard Subcontract. Dkt. 38. It argues that without a stay, it will be forced to advocate for Ballard's claim for payment against the Navy while simultaneously defending Ballard's claim for payment against it and its sureties.

The R&R recommends staying the case pending the resolution of the CDA process, which is Nova's attempt to convince the Navy to pay Ballard's (as well as its own) "Differing Site Conditions" claim, as permitted and required by the Navy's contract with Nova, and by Nova's subcontract with Ballard. Dkt. 61 at 11–12. It relies in part on

1    *United States v. Dick/Morganti*, No. C07-02564, 2007 WL 3231717 (N.D. Cal. Oct. 30,

2    2007) (staying Miller Act bond claim where subcontractor agreed to a stay while the

3    CDA process was resolved). Dkt. 61 at 11–12.

4         Ballard objects to a stay, arguing that *Dick/Morganti* is distinguishable and

5    wrongly decided and that the Court should follow later decisions declining to stay Miller

6    Act claims where the subcontract invalidly purported to waive the subcontractor's Miller

7    Act rights. Dkt. 64 at 10–11 (citing primarily *Apple Valley Comms.*, 2020 WL 8385651).

8         *Dick/Morganti* addressed whether a sub-tier contractor who agreed to stay any

9    Miller Act action pending resolution of the general contractor's upstream CDA claims

10   process was required to stay its claim. It held that the subcontract was not a "complete

11   waiver" of the subcontractor's Miller Act rights. *Dick/Morganti*, 2007 WL 3231717, at

12   *3. It consulted the Act's legislative history and concluded that the Miller Act was not

13   intended to void contractual provisions requiring alternative dispute resolution. Instead,

14   such provisions would "remain enforceable with a claimant's Miller Act rights preserved

15   by a timely suit that can be stayed pending the outcome of the subcontract dispute

16   resolution procedure." *Id.* (citing H.R. Rep. No. 106-277, at 5 (1999)). It held that 40

17   U.S.C. § 3133(c) (regarding waiver of Miller Act rights) did not prohibit staying the

18   action pending resolution of the alternative dispute resolution process. *Id.*

19        *Apple Valley* considered a subcontractor's claim against a surety's payment bond

20   in the face of a subcontract requiring it to agree to stay its claims pending the resolution

21   of the CDA process. The subcontractor had not been paid for years, and the government

22   had rejected its claim; its opportunity for recovery under the "pass through" claims

process was lost. Relying on *Walton Technology, Inc. v. Weststar Engineering, Inc*., 290 F.3d 1199 (9th Cir. 2002), the *Apple Valley* court engaged in a two-step analysis of whether the court should stay the subcontractor's claims against the sureties. The first question was whether the subcontract effected a "complete waiver" of the subcontractor's Miller Act rights, by providing that the subcontractor would be paid *when and if* the general contractor was paid by the government. It held that it did. *Apple Valley,* 2020 WL 8385651, at *8.

Next, the *Apple Valley* court considered whether the waiver was valid under 40 U.S.C. § 3133(c). It concluded that a waiver signed *before* the subcontractor has furnished labor or material is not valid. *Id*. This was so even though the contractual waiver predated the change orders that made up part of the subcontractor's claim, which was largely for the remainder of the original contract price, plus additional compensation based on the subsequent change orders. It so held because the change orders did "not expressly reference the Prime Contract dispute process" and thus were not "clear and explicit" waivers, as the Miller Act requires. *Id*. The *Apple Valley* court also declined to stay the case in its discretion, though it recognized the possibility of a conflict of interest, of prejudice to the general contractor, and of inconsistent results. *Id*. at *9.

Nova asks the Court to follow *Dick/Morganti* and to disregard *Apple Valley* as unpublished, unpersuasive, and distinguishable. First, it argues, *Apple Valley* involved an entirely different temporal context. The government had already denied the general's "pass through" CDA claim, and the subcontractor was facing several more years before

1   its claim could be finally resolved through that process. Here, Nova's CDA claim on

2   Ballard's behalf is pending.

3         Second, Nova points out that *Apple Valley* was decided under California law,

4   which is different that the applicable Washington law on the effect of a "pay if paid"

5   clause on the subcontractor's lien rights. California does not permit such clauses;

6   Washington apparently does. Dkt. 71 at 10 (citing *Amelco Elec. v. Donald M. Drake Co*.,

7   20 Wn. App. 899, 902–03 (1978) (pay if paid clause did not establish a condition

8   precedent; it instead postponed payment for a reasonable time while the general obtained

9   payment from the owner)).

10        Third, Nova correctly points out that the *Apple Valley* subcontractor had not been

11  paid even its original contract price—which was not in dispute—for years. It emphasizes

12  that Ballard *has* been paid the contract price and that Ballard has yet to establish the fact

13  and amount of its entitlement to more compensation under the "differing site conditions"

14  clause of the Prime Contract—which is exactly what Nova is seeking to do on its behalf,

15  in the CDA process Ballard agreed Nova could, should, and would pursue.

16        Finally, Nova argues, the general contractor in *Apple Valley* claimed that the

17  subcontractor had validly waived its Miller Act rights, while neither Nova nor its sureties

18  claim that Ballard has waived its Miller Act rights; they argue persuasively that its rights

19  are fully intact.

20        In the context of a motion to stay a subcontractor's Miller Act bond claim while

21  the general diligently pursues the agreed-upon CDA process on the subcontractor's

22

behalf, *Apple Valley* is not persuasive authority for the proposition that such a stay is error.

The Court agrees with Nova and with the Magistrate Judge's R&R. It is not fruitful to require Nova to fend off Ballard's claim against it, and the sureties Nova agreed to indemnify, while simultaneously advancing Ballard's claim for additional payment from the government through the ongoing CDA process. Ballard agreed to such a dispute resolution procedure, and it does not claim that the increased costs were Nova's fault. Binding authority on the issue does not prohibits such a stay. The Court **ADOPTS** the R&R's recommendation that the case be stayed pending resolution of the CDA process outlined in the contracts. Nova's Motion to Stay, Dkt. 38, is **GRANTED**.

**C.    The R&R's resolution of the sureties' Motion to Strike is ADOPTED.**

The R&R recommends granting in part the sureties' Motion to Strike, contained in its surreply, Dkt. 57, Ballard's Reply, Dkt. 53, in support of its motion for partial summary judgment, Dkt. 30. Ballard objects, claiming its reply was timely and within the 12 pages permitted by Local Civil Rules 7(e)(3) and (6). This appears to be correct, if trivial.

The R&R recommends denying Ballard's underlying Motion for Partial Summary Judgment, Dkt. 30, and Ballard does not object. Ballard's objection to the R&R's proposed resolution of the sureties' Motion to Strike is therefore moot. The objection is **DENIED**, and the R&R's resolution of this issue is **ADOPTED**. The sureties' Motion to Strike, Dkt. 57, is **GRANTED**.

1   **D.      The R&R could not and did not make factual findings.**

2          Nova objects to the R&R and asks the Court to revise the R&R's "procedural

3   background" factual recitations in two respects. It argues that the Magistrate Judge made

4   two incorrect "factual findings": (1) that "Nova directed Ballard to perform this

5   additional and changed work and to 'track its costs,'" Dkt. 61 at 4, ln. 6–7; and (2) that

6   Nova's claim to the government includes "$7,000,000 of mark-up on Ballard's work."

7   *Id.*, ln. 20–21. Nova argues that both facts are disputed and that had it known Ballard was

8   seeking factual findings on these points, it would have filed a declaration explaining why

9   neither assertion is correct. Dkts. 65 and 65-1.

10          Ballard argues that the "factual findings" are "well-supported" and asks the Court

11  to "affirm" them. Dkt. 70 at 2.

12          The Magistrate Judge did not purport to make factual findings in an R&R that

13  recommended resolution of motions to dismiss, for summary judgment, and to stay. It

14  would be improper to do so. "Credibility determinations, the weighing of the evidence,

15  and the drawing of legitimate inferences from the facts are jury functions, not those of a

16  judge, whether he is ruling on a motion for summary judgment or for a directed verdict."

17  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

18          Nova's quarrel with the R&R's factual background is noted, but its objection

19  asking the Court to redline the R&R's "factual findings," Dkt. 65, is **DENIED** because it

20  made no such findings. Ballard's responsive request that the Court affirm the R&R's

21  factual findings, Dkt. 70, is **DENIED** for the same reason. The Court has not made

22  factual findings.

### III.  CONCLUSION

The Report and Recommendation, Dkt. 61, is **ADOPTED**:

(1) Defendant Sureties Federal Insurance Company and Liberty Mutual Insurance Company's Motion to Dismiss Plaintiff Ballard's extracontractual (IFCA and CPA) claims against them, Dkt. 14, is **DENIED**.

(2) Defendant general contractor Nova Group, Inc.'s Motion to Dismiss Ballard's claims against it for lack of subject matter jurisdiction, Dkt. 20 is **GRANTED**.

(3) Ballard's Motion for Partial Summary Judgment on its payment claims against the sureties, Dkt. 30 is **DENIED** without prejudice.

(4) Federal and Liberty Mutual's Alternative Motion to Stay, Dkt. 38, is **GRANTED**.

(5) Ballard's Motion to Strike, Dkt. 39, is **DENIED**.

(6) Federal and Liberty Mutual's Motion to Strike Ballard's Reply, Dkt. 57, is **GRANTED**.

(7) Ballard's Motion to Strike the Sureties' Reply, Dkt. 58, is **GRANTED** in part.

\*\*\*

Additionally, Nova's objection to the R&R's "factual findings," Dkt. 65, is **DENIED**. All Motions to Strike filed in connection with the parties' various objections to the R&R are **DENIED**. The parties are encouraged to file such motions judiciously. This case is already large and complicated. It is not productive to litigate over every perceived foot fault.

1       This matter is **STAYED** pending the resolution of the CDA claims process. The

2 parties shall jointly advise the Court when that process is complete, and the resulting

3 status of this case, within 30 days of that resolution.

4       **IT IS SO ORDERED.**

5       Dated this 27th day of July, 2021.

6

7

                                    _____

8                                     BENJAMIN H. SETTLE
                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22