UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of BALLARD MARINE CONSTRUCTION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NOVA GROUP INC., et al.,<br><br>Defendants. | CASE NO. C20-5954 BHS-DWC<br><br>ORDER ON MOTION FOR RECONSIDERATION |

THIS MATTER is before the Court on Plaintiff Ballard Marine's Motion for Reconsideration or Clarification, Dkt. 73, of the Court's Order, Dkt. 72, adopting the Magistrate Judge's Report and Recommendation ("R&R"), Dkt. 61. The Court stayed Ballard's Miller Act claim pending resolution of the "upstream" Contracts Dispute Act ("CDA") process, as required in the Prime Contract between the Navy and Nova, which was incorporated into the Subcontract between Nova and Ballard. Dkt. 72 at 16.

Ballard seeks clarification on the extent of the stay, arguing that the Court's Order contemplated that the CDA process, and thus the stay, would conclude when the Navy Contracting Officer issued a final decision on Nova's "pass through" claim to the Navy—

which is expected at the end of this month. Dkt. 79-1 at 1. It argues that if the Court intends to stay the case until all possible appeals of that decision are exhausted, it will potentially force Ballard to wait until 2026 to assert its claims against Nova and the sureties and to obtain payment for the work it has already performed. Dkt. 73 at 2. If that was the Court's intent, it asks the Court to Reconsider its Order granting a stay, arguing it would conflict with the Miller Act's purpose and with fundamental equity. Dkt. 73 at 6–7.

Nova and its sureties reiterate that the Subcontract requires Ballard to await the resolution of the CDA process—the determination of the amount of additional payment to which it is entitled—before pursuing Nova or its sureties for that additional payment. Dkt. 77. They ask the Court to confirm that it stayed the case until that determination is made, and to deny Ballard's motion for reconsideration. *Id.* at 10.

Under Local Rule 7(h)(1), motions for reconsideration are disfavored, and will ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b) facts or legal authority which could not have been brought to the attention of the court earlier, through reasonable diligence. The term "manifest error" is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary 622 (9th ed. 2009).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly

discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Neither the Local Civil Rules nor the Federal Rules of Civil Procedure, which allow for motions for reconsideration, are intended to provide litigants with a second bite at the apple. A motion for reconsideration should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly. *Defs. of Wildlife v. Browner*, 909 F.Supp. 1342, 1351 (D. Ariz. 1995).

Ballard argues that the CDA process, including appeals, could take years to fully resolve. It claims that the initial "pass through" portion of that process, in which the contractor (here, Nova) submits a claim to the appropriate government agency (here, the Navy) for a "final decision" on payment, is the appropriate length of any stay. It asks the Court to clarify that, in its discretion, that is what the Court ordered when it adopted the Magistrate Judge's R&R. Dkt. 73 at 4.

Ballard emphasizes the multi-step CDA appeals process, on the other hand, involves not just the Navy, but multiple appellate tribunals. In its reply, Ballard argues that after the initial pass-through process, Nova will not be attempting to persuade the Navy—its contracting partner—of the legitimacy of Ballard's claim, but instead must convince an independent tribunal of the right to additional compensation for the differing site conditions it and Ballard encountered. Dkt. 81. Unlike the almost-complete pass-through process, the CDA appeals process could take years, unfairly delaying payment for work it has long since completed. *Id*.

Nova[1] accurately characterizes Ballard's motion as a repeat of the arguments it made in opposition to a stay before the Magistrate Judge and in its objections to the R&R. The sureties emphasize that they moved for a stay of Ballard's claims against them until a final determination of the amount owed under the subcontract, including any potential appeals of the Navy's Contracting Officer's final decision, consistent with the Subcontract. Dkt. 79 at 2. They emphasize that the R&R accurately reflected this request, Dkt. 61 at 9 ("The Sureties move . . . to stay Ballard's claims against them until Ballard's differing site conditions claim is resolved in accordance with the Subcontract between Nova and Ballard, because at present there is no 'amount due' under the contract."), and recommended that this Court grant that motion, which it did, Dkt. 72.

Nova argues, persuasively, that the Miller Act was "never intended to allow subcontractors to bypass the process under which their monetary entitlement is quantified—a claim process under the Contract Disputes Act that controls all claims against a Government owner for Differing Site Conditions." Dkt. 77 at 3. Indeed, it argues, permitting a subcontractor to pursue a claim for payment from the prime contractor's surety before the amount of its additional[2] entitlement is determined (and notwithstanding the contracts' requirements) would turn both the subcontracting and the surety industries "upside down." Dkt. 84 at 3. Ballard explained its view of the procedure in an August 2020 letter to Nova, explaining that its reading of the contracts, the CDA,

---

[1] Nova's Motion for Leave to File a Surreply, Dkt. 83, is **GRANTED**.

[2] Ballard has been paid both its initial subcontract amount and, recently, an additional $1,947,994.96. *See* Carlson Decl., Dkt. 78, at Exs. 1–4.

and the Miller Act would result in prompt payment, after which Nova and its sureties could pursue "reimbursement" from the government, through the CDA process:

> The bond claim process, if carried out by the sureties reasonably and in good faith, will result in payment to Ballard in the very near future. As such, the claim against the Government will, essentially, be a means for Nova or its sureties to obtain reimbursement for that payment.

Dkt. 78 at 17, Ex. 5. None of the authorities upon which Ballard relies support its claim that this is how the statutes or the contracts work.

As Nova argues, each of the cases Ballard cites for the proposition that a stay pending the CDA appeals process is inconsistent with the Miller Act's purpose involved some sort of unusual fact pattern or "special circumstance" not present in this case. In *Pinnacle Crushing and Constr., LLC v. Hartford Fire Ins. Co.*, No. C17-1980JLR, 2018 WL 1907569, at *2 (W.D. Wash. April 23, 2018), the prime contractor had defaulted on the contract and had been terminated. In *Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1202 (9th Cir. 2002), the subcontractor's claim against the prime contractor and its surety did not appear to be attributable to the government; it was for rent and damage to equipment the prime leased from the subcontractor. In *Apple Valley Commc'ns., Inc. v. Budget Elec. Contractors, Inc.*, No. EDCV 19-1643 PSG (SHKx), 2020 WL 8385651, at *4 (C.D. Cal. Dec. 8, 2020), the prime contractor had failed to diligently pursue the pass-through portion of the CDA process and the government had already denied the claim because the delays were attributable to the prime contractor and other subcontractors. And in each of these cases, a primary issue was whether the subcontractor had validly waived its Miller Act rights. No party in this case has asserted

1   that Ballard waived its Miller Act rights. Furthermore, none of these authorities hold or

2   otherwise establish that the case upon which Nova, its sureties, and the Court relied,

3   *United States v. Dick/Morganti*, was wrongly decided. No. C07-02564, 2007 WL

4   3231717 (N.D. Cal. Oct. 30, 2007) (staying Miller Act bond claim where subcontractor

5   agreed to a stay while the CDA process was resolved). There is not case holding that a

6   subcontractor can sue the prime contractor's surety for additional compensation, when

7   the amount of that compensation has not been determined, and when the subcontractor's

8   claim against the prime contractor is not yet ripe.

9          Nova also disputes Ballard's claim that the entire CDA process will take an

10  additional five years. It asserts that it has been diligently prosecuting Ballard's claim (and

11  its own), with demonstrable success. It correctly asserts that Ballard will necessarily be

12  "involved" in the CDA process, including any appeals, Dkt. 77 at 4–5. In its surreply,

13  Nova also demonstrates that the Navy will similarly continue to be involved, because the

14  Contracting Officer "retains authority to settle any appeal at the Armed Services Board of

15  Contract Appeals ("ASBCA")". Dkt. 84 at 3.

16         The Court intended to stay the case until the completion of the CDA process,

17  including any appeals. Ballard's Motion for Clarification is, to that extent, **GRANTED**.

18  Ballard's Motion for Reconsideration of that decision is **DENIED**. The case is Stayed

19  pending the resolution of the CDA process, including any appeals.

20         IT IS SO ORDERED.

21  /

22  /

Dated this 22nd day of October, 2021.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 7